KULIK, APPELLANT, *v.* BOARD OF
REVIEW, OHIO BUREAU OF
EMPLOYMENT SERVICES, ET AL.,
APPELLEES.

(No. 47289—Decided May 21, 1984.)

*Mr. Thomas W. Weeks,* for appellant.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Mr. Q. Albert Corsi,* for appellees.

DAY, C.J. Claimant-appellant, Scott R. Kulik (claimant), appeals the decision of the court of common pleas which affirmed the board of review's denial of his claim for unemployment compensation. The judgment is reversed.

I

Claimant was employed for Component Systems, Inc., from July 9, 1979 to March 11, 1981. Kulik had been employed as an "assembler" until the last three to four months of his employment during which time he worked as a "mill man." On September 2, 1980, while employed as an assembler, he visited his allergist, Dr. Korosi. He was under the physician's care from September 2, 1980 to March 13, 1981. The board in its decision stated that:

"Throughout claimant's employment with Component Systems, Inc., claimant had experienced respiratory problems which were due to allergic reactions to various elements, some of which were found at work. In December, 1980, claimant underwent a series of tests under the supervision of Dr. Korosi, M.D. for allergy tests. On or

about December 18, 1980, these tests were returned to Dr. Korosi. At that time Dr. Korosi advised claimant that due to the fact that some of the elements he was allergic to were encountered at work, claimant should quit employment with Component Systems, Inc. Because of financial reasons, claimant did not take Dr. Korosi's advice at that time and did not inform his employer of Dr. Korosi's recommendations.''

The doctor had also advised claimant that he should stay away from glue, and stay away as much as possible from gypsum powder. Attempts to avoid contact with these substances by allowing Kulik to do mill work were to no avail. Despite the absence of any improvement in his medical condition following the change in his working location, claimant remained on the job. The board further stated:

"On March 1, 1981, Dr. Korosi again advised claimant to quit employment. Claimant did not advise his employer of this recommendation either and continued to work through March 4, 1981.''

On March 4, 1981, claimant was involved in an argument with his supervisor and walked off his job. He was suspended indefinitely pending an investigation but the union successfully interceded on his behalf. On March 11, 1981, claimant returned to work and notified Mr. Friedman, the Assistant Secretary-Comptroller of Component Systems, that he was terminating his employment upon the advice of his doctor.

On April 23, 1981, claimant applied for unemployment compensation benefits. The Administrator of the Ohio Bureau of Employment Services (O.B.E.S.) allowed the claim. The employer requested reconsideration. The administrator affirmed the decision. The employer appealed to the Board of Review of O.B.E.S.

On July 29, 1981, claimant and Friedman testified in a board hearing conducted by a referee. There, the administrator's decision was affirmed. The employer applied to the board to institute further appeal; the appeal was granted. Hearing was held before another referee on July 1, 1982. On September 30, 1982, the board issued its decision reversing all previous determinations and found that claimant had quit work without just cause and was not entitled to receive unemployment compensation benefits pursuant to R.C. 4141.29(D)(2)(a). Pursuant to R.C. 4141.28(O), claimant appealed to the court of common pleas. That court reaffirmed the board without a written opinion. Claimant appeals to this court. He assigns one error:

"The Court of Common Pleas erred in affirming the Board of Review which reversed a decision of the Ohio Bureau of Employment Services granting unemployment compensation benefits to appellant Scott R. Kulik; the Board's decision was unlawful, unreasonable, and against the manifest weight of the evidence in that Mr. Kulik quit his job for 'just cause' under O.R.C. § 4141.28(D)(2)(a) [sic]."

## II

It is well-settled that the determination "of purely factual questions is primarily within the province of the referee and the board of review" and a reviewing court does not make its own determination of the weight of the evidence. *Brown-Brockmeyer Co.* v. *Roach* (1947), 148 Ohio St. 511, 518 [36 O.O. 167]. However, R.C. 4141.28(O) provides that the reviewing court must determine whether the decision of the board of review is "unlawful, unreasonable or against the manifest weight of the evidence."

An employee who quits work because his health is threatened due to materials on the jobsite to which he is allergic quits with just cause. *Doersam*

v. *OBES* (App. 1977), Unempl. Ins. Rep. (CCH), Ohio Rules and Decisions 1971-1979, Paragraph 9102, at 38,947.

In *Doersam* the claimant had commenced employment as a Corvette body repairman on September 1, 1974. He began to suffer from bronchial asthmatic attacks and consulted a physician in June 1975, who advised the claimant:

"[T]o quit his employment because of the fiberglass dust he had been exposed to and to find employment in an area where claimant would not be exposed to air pollution such as dust and fumes. Rather than quitting immediately, after discussing the matter with his employer, claimant attempted to continue work but in a different location in the employer's shop. Claimant, however, did not return to work after August 28, 1975." *Id.*

In resolving the issue of whether or not the claimant had quit with just cause the court concluded:

"A person who is advised by his doctor to quit his employment because the working conditions are injurious to his health has just cause to quit his employment. As indicated above, a person having such just cause for quitting his employment should not be penalized for attempting to continue the employment under slightly different conditions but in a place where the basic problem involved, dust and fumes, is the same." *Id.* at 38,949.

It has been noted that on March 1, 1981, Dr. Korosi advised on a second occasion that claimant terminate his employment with Component Systems. On March 11, 1981, the first day Kulik was allowed to return to work following the altercation with his supervisor, claimant informed his employer he was quitting due to his allergies. The "quit" was reasonable under all the circumstances. These included medical advice and attempts to adjust the employment environment. Claimant's financial need to stay on the job despite a health threatening situation is not a rebutting factor. Claimant's "quit" for reasons of health did not disqualify him.

The assignment of error is welltaken.

### III

The court of common pleas' decision is reversed and the cause remanded for further proceedings in accordance with this opinion.

*Judgment reversed and cause remanded.*

NAHRA and PATTON, JJ., concur.